IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLEE GULA, | ) | CASE NO. 1:17 CV 700 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Kimberlee M. Gula under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her application

for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript

of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

_____

[1] ECF # 12. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

[6] ECF # 11.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be reversed and remanded for further administrative proceedings as it is not supported by substantial evidence.

## Facts

### A. Background facts and decision of the Administrative Law Judge ("ALJ")

Gula, who was 49 years old at the time of the administrative hearing,[11] graduated high school[12] and was not married.[13] Her past relevant employment history includes work as an administrative assistant.[14] The ALJ, whose decision became the final decision of the Commissioner, found that Gula had the following severe impairments: depressive disorder; anxiety disorder; and systemic lupus erythematosus.[15]

---

[7] ECF # 24 (Commissioner's brief); ECF # 18 (Gula's brief).

[8] ECF # 24, Attachment 1 (Commissioner's charts); ECF # 18, Attachment 1 (Gula's charts).

[9] ECF # 17 (Gula's fact sheet).

[10] ECF # 28.

[11] ECF # 17 at 1.

[12] *Id.*

[13] ECF # 9, Transcript ("Tr.") at 286.

[14] *Id.* at 271.

[15] *Id.* at 265.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Gula's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: she should never climb ladders, ropes, or scaffolds. The claimant [is] limited to tasks involving no fast-paced work and no strict production quotas. She is also limited to occasional interaction with the public, coworkers, and supervisors.[16]

The ALJ decided that this residual functional capacity precluded Gula from performing her past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed nationally that Gula could perform.[18] The ALJ, therefore, found Gula not under a disability.[19]

## B.  Issues on judicial review

Gula asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Gula presents the following issues for judicial review:

- "Whether the ALJ violated the treating physician rule causing an error in assessing plaintiff's residual functional capacity."

---

[16] *Id.* at 267-68.

[17] *Id.* at 271.

[18] *Id.*

[19] *Id.* at 272.

- "Whether the ALJ's analysis of Ms. Gula's credibility was sufficiently specific and reasonable."

- "Whether material new evidence warrants remand."[20]

For the reasons that follow, I conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded for further administrative proceedings.

## Analysis

### A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

---

[20] ECF # 18 at 1.

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

---

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] 20 C.F.R. § 404.1527(c)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

---

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003)).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33]  The court noted that the regulation expressly contains a "good reasons" requirement.[34]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(c)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36]  It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly

---

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.* (citing and quoting 20 C.F.R. § 404.1527(d)(2)).  This provision is now found at 20 C.F.R. § 404.1527(c)(2).  *See* SOCIAL SECURITY ADMINISTRATION, HOW WE COLLECT AND CONSIDER EVIDENCE OF DISABILITY, 77 Fed. Reg 10651, 10656 (Feb. 23, 2012).

[35] *Id.* at 546.

[36] *Id.*

transaction of the agency's business.[37]  The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38]  It concluded that the regulatory requirement for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41]  This does not represent a new interpretation of the treating physician rule.  Rather, it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

[42] *Rogers*, 486 F.3d at 242.

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. § 404.1527(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 404.1527(c)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency

---

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Rogers*, 486 F.3d at 242.

[56] *Blakley*, 581 F.3d at 406-07.

physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 404.1527(c)(i)-(ii), (3)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source;[61]

- the rejection or discounting of the weight of a treating source without assigning weight;[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining);[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source;[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore;[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399. *See* n.34, *supra*, regarding the change in the regulation's subparts.

[68] *Id.* at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.

### 3.    *Credibility*

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[71] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms or limitations will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability

---

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[72]

The regulations also make the same point.

We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[73]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[74]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[75] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

---

[72] *Id.* at 34484.

[73] 20 C.F.R. § 416.929(c)(2).

[74] *Swain*, 297 F. Supp. 2d at 988-89.

[75] 20 C.F.R. § 404.1529(c)(3).

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[76]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess her subjective complaints.[77] A court may not disturb the ALJ's credibility determination absent compelling reason.[78]

### 4. Sentence six remand

Sentence six of 42 U.S.C. § 405(g) permits a court to order a case remanded for consideration of additional evidence under certain circumstances. The Sixth Circuit has interpreted this statute as creating the following requirements for a remand to consider new

---

[76] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[77] *Buxton*, 246 F.3d at 773.

[78] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

evidence: that the evidence be "new"– that is, "not in existence or available at the time of the administrative proceeding"; that the evidence be "material," which requires showing a reasonable probability that the Commissioner would have reached a different disposition of the claim if presented with the new evidence; and that "good cause" exists for not producing the evidence in a prior proceeding, which requires showing "a reasonable justification for the failure to acquire and present the evidence of inclusion in the hearing before the ALJ."[79]

The Sixth Circuit "has taken a harder line on the good cause test."[80] "This requires more than just showing evidence did not exist at the time of the ALJ's decision, but rather a Plaintiff must 'give a valid reason for his failure to obtain evidence prior to the hearing.'"[81]

## B. Application of standards

### 1. Treating sources

Gula suffers from lupus, fibromyalgia, depression, and anxiety. The ALJ assigned limited to some weight to the opinions of Gula's primary care physician, Dr. Eren.[82] By

---

[79] *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

[80] *Oliver v. Sec'y of Heath & Human Servs.*, 804 F.2 964, 966 (6th Cir. 1986) (finding failure to satisfy good cause requirement where additional medical records prepared after final decision and could not have been presented at hearing).

[81] *Issac v. Comm'r of Soc. Sec.*, No. 1:16 CV 1345, 2017 WL 3705902, at *10 (N.D. Ohio Aug. 28, 2017) (citing and quoting *Oliver*, 804 F.2d at 966)).

[82] Tr. at 270.

contrast, the ALJ assigned the opinion of the state agency reviewing physician significant weight.[83]  Dr. Eren gave two source opinions after the state agency physician rendered his opinion.[84]  Dr. Perhala, the treating rheumatologist, also issued his opinion after that of the state agency physician.[85]

The opinions of both treating sources contained specific work-related limitations.[86] The ALJ discounted them because the degree of limitations in the opinions were not supported by the treatment notes.[87]  Although the Commissioner did not frame the argument in these precise terms, the crux of the agency's argument here is that the treatment notes post-dating the opinion of the state agency reviewing physician support that opinion. Accordingly, the discounting of the treating sources's opinions was justified.

While the ALJ failed to classify Drs. Ehren and Perhala as treating sources, the ALJ properly explained his reasoning for discounting the opinions of Drs. Eren and Perhala.  In the process, however, the ALJ neglected his responsibility to consider all of the evidence in the record by "cherry-picking" portions of the record that supported his findings while ignoring others.[88]  In rejecting Dr. Perhala's opinion that Gula was limited to 20 hours of

---

[83] *Id.*

[84] ECF # 18, Attachment 1 at 4-5.

[85] *Id.* at 3.

[86] Tr. at 1034, 1089-90, 1362-63.

[87] *Id.* at 270-71.

[88] *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723-24 (6th Cir. 2014).

sedentary work per week, the ALJ stated this was inconsistent with Dr. Perhala's notes regarding Gula's mild malaise and mild-to-moderate fatigue and that her lupus was well controlled with medication.[89] The ALJ omitted from this discussion the portion of Dr. Perhala's opinion that attributed those restrictions to Gula's fibromyalgia:[90] "Her lupus appears fairly well controlled (rash/joints) with meds but it is her fatigue/insomia/muscle pain - more manifestations of fibromyalgia that inhibit her from ADL's [sic]/work/etc."[91]

The ALJ likewise focused on the absence of trigger points to the exclusion of Dr. Perhala's finding that Gula "has a strong fibromyalgia component with fatigue with the muscle pain being the most active and this makes separating out her lupus difficult."[92] Furthermore, the ALJ "played doctor" by consistently characterizing Gula's fibromyalgia as a "probable" or "possible" diagnosis because of "insufficient trigger point evidence"[93] in the face of Drs. Eren and Perhala's actual diagnoses of fibromyalgia.[94]

---

[89] Tr. at 271.

[90] *Id.*

[91] *Id.* at 1363-64.

[92] *Id.* at 1360.

[93] *Id.* at 266, 270.

[94] *Id.* at 1033, 1089, 1360.

"'The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'"[95]  Therefore, remand is required.

## 2.    *Credibility*

Contrary to Gula's assertion, the ALJ sufficiently articulated his reasons for discounting her subjective complaints of disabling physical and mental limitations.[96]  The ALJ's evaluation of subjective complaints is entitled to great deference.  This Court may only disturb the ALJ's credibility finding for compelling reasons, and no such reasons are present here.  Therefore, the ALJ's credibility finding stands.

## 3.    *Sentence six remand*

The ALJ did not find Gula's fibromyalgia a severe impairment at Step Two, although as discussed above her treating sources had given that diagnosis.  In several places in the ALJ's opinion, he noted the absence of adequate tender point findings,[97] a fair observation based on the treatment notes.  Two months after the ALJ's opinion, Gula underwent an evaluation by Margaret Tsai, M.D., a rheumatologist at the Cleveland Clinic.[98]  Dr. Tsai

---

[95] *Gentry*, 741 F.3d at 729 (citing *Cole v. Astrue*, 661 F.3d 931, 939-40 (6th Cir. 2011)).

[96] Tr. at 268-71.

[97] *Id.* at 266, 270.

[98] *Id.* at 21, 25.  Dr. Tsai saw Gula as a consultive examiner in 2013 before the onset date, and her evaluation at the time found no tender points.  *Id.* at 750-53.

found tenderness at 16 of the 18 trigger points.[99]  Based on this evaluation, Dr. Tsai issued

an RFC opinion that would support a disability finding.[100]  In follow up examinations

throughout 2016, Dr. Tsai found a significant number of tender points.[101]

The Commissioner conceded that Dr. Tsai's opinions and treatment notes are "new"

because they did not exist at the time the ALJ issued his decision.  But, the Commissioner

disputed the materiality of this evidence because at best they show "aggravation" of the

impairment after the date of decision and not its severity and limitations therefrom during the

relevant time period.

Gula has the better argument on the materiality prong.  As a rheumatologist, Dr. Tsai's

tender point evaluation is the "gold standard" for evaluating the severity and limiting effects

of fibromyalgia.  Her treatment notes support her RFC opinion.  Had this evidence come into

the record before the ALJ's decision, her opinion would have been entitled to at least

substantial weight.[102]  Given the ALJ's statements regarding the absence of adequate tender

point findings and discounting Gula's fibromyalgia as a "not fully supported diagnosis"

because it was often described as "probable" or "possible," it appears there is a reasonable

---

[99] *Id.* at 25.

[100] *Id.* at 21, 25-26.

[101] *Id.* at 87, 121, 135.

[102] Based on the continuing care rendered after the initial evaluation and opinion, an argument could be made that Dr. Tsai should qualify as a treating source.

probability the Commissioner would have reached a different decision had this evidence been presented to the agency.

But Gula fails to meet the good cause test. In her brief, Gula devoted a total of two sentences to the good cause requirement: "The timing of the collection of this evidence was not within Ms. Gula's control and did not exist in the submitted format at the time of the hearing. The Plaintiff has established 'good cause' for her failure to submit the records to the [ALJ] since this evidence was not available prior to the hearing decision."[103] Although Gula cited the Sixth Circuit's decision in *Foster* in support of her argument, it appears Gula may have confused the Court's discussion of the "new" test with the good cause test.[104] As set forth above, the fact alone that the evidence did not exist at the time of the hearing is insufficient to establish good cause in this circuit,[105] and Gula failed to present any other explanation to show good cause for her delay in submitting this evidence to the ALJ. Therefore, remand under sentence six is inappropriate.

---

[103] ECF # 18 at 27 (citing *Foster*, 279 F.3d at 357).

[104] *See Foster*, 279 F.3d at 357-58. In *Foster*, the Sixth Circuit found the district court correctly concluded that remand under sentence six was inappropriate. *Id.* at 357. Foster had more than a year and a half to present new evidence to the ALJ; while Foster blamed the ALJ's failure to respond to her requests for additional testing as the reason she did not acquire and present the evidence, the "burden of providing a complete record . . . rests on the claimant." *Id.* (citation omitted). And "*even if*" Foster met the good cause requirement, the medical opinion she relied on based a "diagnosis of mental retardation solely on Foster's IQ scores and made no reference to Foster's school records or work history." *Id.* at 357-58 (emphasis added).

[105] *See Oliver*, 804 F.2 at 966; *Issac*, 2017 WL 3705902, at *10.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Gula had no disability. Accordingly, the decision of the Commissioner denying Gula disability insurance benefits is reversed and remanded for proper consideration of Gula's treating sources's opinions consistent with this order.

IT IS SO ORDERED.

Dated: July 25, 2018                                    s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge